IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN J. KORESKO, V, et al.     :     CIVIL ACTION
                               :
          v.                   :
                               :
HILDA SOLIS, Secretary,        :
United States Department       :
of Labor, et al.               :     NO. 09-3152

MEMORANDUM

McLaughlin, J.                              November 10, 2011

          This case involves the Department of Labor's ("DOL")

decision to subpoena and ultimately sue the plaintiffs for

violations of the Employee Retirement Income Security Act of 1974

("ERISA").  In 2003 the Department of Labor began investigating

the plaintiffs for possible violations of the statute.  The DOL

issued two sets of administrative subpoenas to supplement its

investigation.  The Court enforced the first set of subpoenas

entirely and the second set in part when the plaintiffs did not

comply.  In 2009, when the DOL filed an ERISA enforcement suit in

this Court, the DOL issued a press release stating that they had

filed the lawsuit and describing the allegations against the

plaintiffs.

          The plaintiffs claim that the subpoenas, the DOL's

lawsuit, and the press release violated their rights under

various provisions of the United States Constitution, the

Pennsylvania Constitution, the Administrative Procedure Act

("APA"), and the Dragonetti Act.  The defendants have moved to

dismiss the complaint.  The Court will grant the defendants'
motion.

I.   Background

    A.   Related Litigation

        John Koresko, ("Koresko") a plaintiff in this case,
administers welfare benefits plans for employers through his
company, PennMont Benefit Services.  In 2004 and 2006, the DOL
issued administrative subpoenas to John Koresko, Lawrence Koresko
(the principal of PennMont), the PennMont Benefit Services
company, the trusts through which the benefit plans were
administered, and Koresko's law firm.

        The DOL brought enforcement proceedings when the
plaintiffs did not comply with the subpoenas.  The Court issued
an order enforcing the 2004 subpoenas, which was affirmed by the
United States Court of Appeals for the Third Circuit.  Chao v.
Koresko, No. 04-mc-74, 2004 WL 1102381 (E.D. Pa. May 11, 2004).
On December 8, 2008, the Court issued an order granting in part
and denying in part the petition to enforce the 2006 subpoenas.
The Court of Appeals affirmed the District Court's decision.
Chao v. Koresko, No. 04-mc-74, Docket Nos. 181, 214.

        The DOL filed an ERISA enforcement action, alleging
that Koresko had underpaid benefits to plan participants,
improperly withdrawn more than $1 million in plan assets from the
plan trusts, and illegally used those assets.  A press release

-2-

was issued on the same day detailing the allegations against the plaintiffs.  See Solis v. Koresko, No. 09-988, 2009 WL 2776630, at *1-*4 (E.D. Pa. Aug. 31, 2009) (Jones, J.) (detailing the enforcement action).

Koresko filed two motions in response to the DOL's lawsuit.  First, he filed for a temporary restraining order against the government arguing that the lawsuit and the press release violated his constitutional rights.  The Court denied the request for a temporary restraining order.  Koresko appealed, and the Court of Appeals affirmed the Court's denial of the motion.  Second, Koresko filed a motion for contempt.  He claimed that the lawsuit violated the Court's stay order in the subpoena enforcement actions.  The Court denied the motion for contempt, and the Court of Appeals affirmed.  Solis v. Koresko, No. 09-988, 2009 WL 911131 (E.D. Pa. Mar. 31, 2009); Sec'y of Labor v. Koresko, 378 F. App'x 152 (3d Cir. 2010).

B.    Allegations of the Complaint

The plaintiffs sued eleven current and former DOL employees in their personal and official capacities:  Hilda Solis, the Secretary of Labor; Mabel Capolongo, the regional director of the agency's Employee Benefits Security Administration; six DOL attorneys; and three DOL investigators.[1]

_____

[1] Mabel Capolongo, the regional director of the agency's Employee Benefits Security Administration, is listed as a

1.   <u>Causes of Action in the Complaint</u>

Count I of the complaint alleges that the defendants deprived the plaintiffs of their rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution, and Count II alleges that the defendants engaged in a conspiracy to do so.  Compl. ¶¶ 58-63.

Count III claims a violation of the APA.  The plaintiffs claim that the rules used by the DOL to issue the subpoenas and file the lawsuit against them were arbitrary and unreasonable.  Compl. ¶¶ 71-74.

The complaint contains several state law claims.  Count IV alleges a violation of the Pennsylvania Constitution's right to reputation.  Count V alleges substantive violations of the Dragonetti Act, Pennsylvania's codification of the tort of malicious prosecution.  Count VI alleges conspiracy to commit these state law violations.  Compl. ¶¶ 76-86.

Finally, the plaintiffs claim in Count VII that the defendants' conduct was wilful, intentional, and reckless, and entitles them to punitive damages.  Compl. ¶ 88.

This case was initially assigned to the Honorable Darnell Jones.  When the government filed a motion to dismiss the plaintiffs' first complaint, the plaintiffs asked for leave to

---

defendant on the cover sheet of the complaint.  Her name is not mentioned in the list of "parties" given in the complaint.

amend the complaint.  Judge Jones granted the request.  The case was reassigned to the undersigned.  The defendants move to dismiss all claims in the amended complaint.

      2.   <u>Factual Allegations</u>

      The complaint alleges that the DOL retaliated against the plaintiffs when they exercised their First Amendment rights and expressed views different from those held by the DOL in their press release, which received significant media attention in Philadelphia.  One article written about the case included the following statement from the Secretary of Labor:  "These defendants abused their duty of trust to workers and employers when they diverted plan assets for personal gain."  Compl. ¶ 36.

      On June 24, 2009, the DOL sent a letter to clients of the Koresko Law Firm and benefit plan participants.  The letter asked these individuals to contact the DOL if they were represented by Koresko.  Ms. Bonney, a lawyer for Mr. Koresko's law firm and a plaintiff in this case, contacted members of the DOL to demand they cease contacting Koresko clients.  Compl. ¶¶ 27, 28, 40.

      The plaintiffs aver that the defendants knowingly issued improper administrative subpoenas in violation of the APA and in order to violate their rights under the U.S. Constitution. Compl. ¶¶ 63-71.

The defendants are accused of undertaking the enforcement actions and associated behavior with the express purpose of harming the plaintiffs' professional reputations and putting them out of business.  Compl. ¶¶ 44-46, 77, 79.

## II.  Discussion[2]

### A.  Claims Against Attorney Defendants and All Defendants Sued in Their Official Capacities

The Court will dismiss the claims against the DOL lawyers on the ground of absolute immunity, and all claims against the government employees in their official capacities.[3]

### 1.  Absolute Immunity for Attorney Defendants

The plaintiffs aver that various actions by DOL attorneys gave rise to the causes of action in the complaint. From this list, the Court distills two actions by the DOL's lawyers that allegedly violated the plaintiffs' rights:

---

[2] In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept all well-pleaded facts as true, and must construe the complaint in the light most favorable to the plaintiff, while disregarding any legal conclusions.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The court must then determine whether the facts alleged are sufficient to show that the plaintiff has a "plausible claim for relief".  Id. at 210.  If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, then the complaint has alleged, but it has not shown, that the pleader is entitled to relief.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

[3] The analysis of the constitutional and state-law claims, Section II.B infra, applies to defendants Hilda Solis, Fred Seigert, Bindu George, Mabel Capolongo, and Jocelyn Sweeting in their personal capacities.

(1) issuing the administrative subpoenas, and (2) filing the ERISA enforcement suit.  Compl. ¶ 25, 27, 33, 38.[4]

In Imbler v. Pachtman, 424 U.S. 409, 427-31 (1976), the Supreme Court held that prosecutors are absolutely immune from liability under 42 U.S.C. § 1983 when they are initiating or presenting a case.  The test focuses exclusively on the nature of the conduct, not the title of the actor, to determine if the application absolute immunity is appropriate.  Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993).  Immunity applies with equal force to criminal prosecutors and lawyers for federal agencies.  Butz v. Economou, 438 U.S. 475, 511 (1978).

As articulated by Imbler, absolute immunity applies only to conduct that is "intimately associated" with the judicial phase of a proceeding.  424 U.S. at 430.  When an attorney "performs . . . investigative functions," however, he or she is only entitled to qualified immunity.  Buckley, 509 U.S. at 273. Here, the DOL's attorneys did not perform any special examination that would normally be performed by an investigator.  The line that distinguishes when an attorney acts as an administrator from when he acts as an officer of the court is not precise, but

---

[4] The plaintiffs also allege that the government attorneys were involved in the press release about the DOL action against Koresko, and should have known that the press release was conducted illegally.  Compl. ¶ 35.  Statements to the press are not entitled to absolute immunity.  Buckley, 509 U.S. at 277-78. The Court, however, also dismisses these claims based on the press release for failure to state a claim.

actions taken by a prosecutor in preparation for the initiation of a proceeding are protected by absolute immunity.  <u>Id.</u>

The Court concludes here that a decision to issue a subpoena falls within the protected sphere of activity and is "intimately associated" with the judicial process.  The issuance of a subpoena falls within the normal duties of an attorney as he contemplates initiating a case.

The plaintiffs also may not sue any of the DOL attorneys for the decision to bring an ERISA action.  <u>Imbler</u>, 424 U.S. at 430.  The plaintiffs' belief that the DOL has improper motives is irrelevant to the immunity analysis.  <u>Jennings v. Schuman</u>, 567 F.2d 1213, 1221 (3d Cir. 1977) (an officer of the court is entitled to absolute immunity while performing official duties "even if . . . he is motivated by a corrupt or illegal intention"); <u>see also</u> <u>United States ex rel. Rauch v. Deutsch</u>, 456 F.2d 1301, 1302 (3d Cir. 1972).

When a prosecutor's action is "unauthorized" from the start, however, absolute immunity is unavailable.  <u>Schrob v. Catterson</u>, 948 F.2d 1408, 1420 (3d Cir. 1991).  The plaintiffs argue that because the subpoena and the civil suit are not authorized by law, absolute immunity cannot apply.

A government attorney is still entitled to immunity if a reasonable person in his position could have believed his actions were authorized by law.  <u>Ernst v. Child and Youth Servs.</u>,

108 F.3d 486, 502 (3d Cir. 1997).  The Department of Labor's jurisdiction over the plaintiffs' companies is not yet resolved after years of litigation.  A reasonable attorney thus could have had a good faith belief that the DOL's lawsuit was authorized under ERISA.  All claims against defendants Joan Roller, Linda Henry, Natalie Appetta, Catherine Oliver Murphy, Donald Neely, and Joann Jarquin will be dismissed.

### 2. Federal Employees Sued in Official Capacities

The amended complaint states that the plaintiff is suing the named federal defendants in both their individual and official capacities.  Where the Attorney General or his designee certifies that a defendant employee was acting within the scope of his employment, the action is deemed one against the United States, and the United States is substituted as the party defendant.  28 U.S.C. § 2679(d)(1).  Here, the United States Attorney for the Eastern District of Pennsylvania, as designee of the Attorney General, has certified that each of the federal defendants was acting within the scope of employment.  Defs.' Mot. to Dismiss Ex. 1.  The claims against all defendants in their official capacities must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  The Court will analyze those claims as brought against the United States.

B.   <u>Constitutional Claims</u>

The plaintiffs allege that the defendants violated their First, Fifth, and Fourteenth Amendment rights.  Each of these claims will be dismissed.

1.   <u>First Amendment Claims</u>

In order to survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Reciting the elements of a cause of action or asserting legal conclusions does not meet the requirements of Rule 8.  <u>Aschroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  Factual allegations are needed to support the claim to make it plausible and not merely speculative.  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

The plaintiffs claim that the defendants violated their First Amendment rights by retaliating against them after they openly criticized certain DOL positions.  Compl. ¶¶ 58-60.  There are no factual allegations showing that the plaintiffs' First Amendment rights were violated.  The complaint simply states that the plaintiffs' First Amendment rights were violated.  This is the type of allegation held to be insufficient by the Supreme Court in <u>Iqbal</u>.

The plaintiffs claim that the initial suit against the plaintiffs was filed without jurisdiction, and that this proves

that the Department of Labor acted with a retaliatory purpose. Compl. ¶ 38.  This allegation does not cure the complaint's deficiencies.  A pleading does not meet the plausibility standard when it alleges facts that are merely consistent with the cause of action.  <u>Twombly</u>, 550 U.S. at 557.  This claim will be dismissed.

        2.  <u>Fifth Amendment Due Process</u>

      The plaintiffs claim that the defendants "violated the plaintiffs' right to . . . due process before any attempt to deprive one of property." Compl. ¶¶ 60.  In their opposition to the defendants' motion, they clarify that they believe that the DOL issued defamatory statements that harmed the plaintiffs' reputations in such a way as to violate the due process clause. Pls.' Opp. 7-8.  For a harm-to-reputation claim to qualify as a due process violation, the plaintiff must assert that he has suffered "stigma plus," or that the defamation occurred in conjunction with the alteration of a legally protected right or status.  <u>Paul v. Davis</u>, 424 U.S. 693, 709-11 (1979); <u>see also</u> <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 236 (3d Cir. 2006).

      The plaintiffs argue that four elements of this case satisfy the stigma plus requirement: (1) loss of future employment and income; (2) property interests in their professional licenses; (3) the right to free expression; and (4) harm to their reputations as protected by the Pennsylvania

Constitution.  The Court concludes that none of these factors
amounts to stigma plus.

        a.    Future Employment and Professional Licenses

       Neither the loss of future employment and income, nor
the interference with the plaintiffs' professional licenses,
meets the Paul "stigma plus" standard.

       The Court of Appeals for the Third Circuit has held
that possible loss of income or employment does not constitute a
cognizable "stigma plus" due process violation.  Graham v. City
of Philadelphia, 402 F.3d 139, 147 (3d Cir. 2005); see also Clark
v. Falls, 890 F.2d 611, 620 (3d Cir. 1989) ("the loss of
potential clients is not sufficient to transform a reputation
interest into a liberty interest").

       Nor do the plaintiffs have a property interest in their
professional licenses.  The Third Circuit has held that a
property interest may qualify as a "sufficient 'plus'" in the
stigma plus analysis.  Dee v. Borough of Dunmore, 549 F.3d 225,
234 (3d Cir. 2008).  To see whether a property interest exists,
the court must look to state law.  Id. at 229.  Under
Pennsylvania law, professional licenses are a not a property
right of the holder.  See MFS, Inc. v. Dilazaro, 771 F. Supp. 2d
382, 434 n.50 (E.D. Pa. 2011) (collecting cases and noting that
"Pennsylvania courts have repeatedly held that permits and
licenses are a mere privilege.").  The threat alleged to the

-12-

plaintiffs' professional licenses thus does not meet the "stigma plus" standard.

b.   Right to Free Expression

The plaintiffs argue that their right to free expression is a protected right or interest that has been sufficiently interfered with to meet the "stigma plus" standard. Although the First Amendment undoubtedly protects free speech, the plaintiffs have not adequately pled a violation of their First Amendment Rights (see above).  Thus, the right to free expression does not bring the plaintiffs' harm to reputation claim to the level of a due process violation.

c.   Reputational Rights under the Pennsylvania Constitution

The plaintiffs argue that because the right to one's reputation is protected by the Pennsylvania Constitution and not merely state tort law,[5] it is also protected by the due process component of the Fifth Amendment.  Thus, the plaintiffs argue, the DOL's negative statements about them violated their rights to due process through harming their reputation "plus" interfering with their property interest in reputation as protected by the Pennsylvania Constitution.

_____

[5] The Pennsylvania Constitution states that "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, or acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."  Pa. Const. Art. 1 § 1.

The courts of this district have repeatedly rejected this argument.  See Moiles v. Marple Newtown Sch. Dist., No. 01-4526, 2002 WL 1964393, at *10 n.14 (E.D. Pa. Aug. 23, 2002) (concluding that similar allegations fail to meet the "stigma-plus" standard); Manion v. Sarcione, 192 F. Supp. 2d 353, 356 (E.D. Pa. 2001) (finding that favored status under Pennsylvania law does not secure a property interest in one's reputation for purposes of the Fourteenth Amendment); Gross v. Taylor, No. 96-6514, 1997 WL 535872, at *14 n.7 (E.D. Pa. Aug. 5, 1997) (rejecting an attempt to distinguish Paul on the grounds that Article I, Section 1 elevates the protection for reputation above simple tort actions); Puricelli v. Borough of Morrisville, 820 F. Supp. 908, 914 (E.D. Pa.), aff'd, 26 F.3d 123 (3d Cir. 1993), cert. denied, 513 U.S. 930 (1994); Garner v. Township of Wrightstown, 819 F. Supp. 435, 441 (E.D. Pa.), aff'd, 16 F.3d 403 (3d Cir. 1993); Lee v. Mihalich, 630 F. Supp. 152, 155 (E.D. Pa. 1986); cf. Christie v. Borough of Folcroft, No. 04-5944, 2005 WL 2396762, at *10 n.9 (E.D. Pa. Sept. 27, 2005) (rejecting an argument that the Paul holding does not apply to acts occurring in Pennsylvania because of reputation's heightened protection under state constitutional law).

Indeed, the Paul Court established that the procedural component of the Due Process Clause protects rights that "stem from an independent source such as state law."  424 U.S. at 709.

-14-

However, "<u>federal constitutional law</u> determines whether that
interest rises to the level of a 'legitimate claim of
entitlement' protected by the Due Process Clause."  <u>Town of
Castle Rock v. Gonzales</u>, 545 U.S. 748, 757 (2005) (emphasis in
original).  Other courts in this district have concluded that the
reputation interest found in Article I, Section 1 does not rise
to that level as a matter of federal constitutional law, and the
Court agrees.

        The Court also notes that even if the plaintiffs'
federal rights to due process were violated, the appropriate
remedy is a hearing.  <u>Graham</u>, 402 F.3d at 142 n.2.  Where a
hearing is available in which the plaintiff is afforded an
opportunity to clear his name, as was the case in <u>Graham</u>'s
criminal trial, "no further protections are necessary."  <u>Nudelman
v. Borough of Dickson City Police Dep't</u>, 2006 WL 952393, at *3
(citing <u>Graham</u>, 402 F.3d at 147).  Here, the plaintiffs are and
have been afforded repeated opportunities to refute the charges
that form the basis for their harm-to-reputation claims by
challenging the administrative subpoenas and defending the ERISA
enforcement action, and thus have not been deprived of due
process.

4.   Fourteenth Amendment Claims

The Fourteenth Amendment limits the authority of the states, not the federal government.  Bolling v. Sharpe, 347 U.S. 497, 499 (1954).  The plaintiffs' claims under this constitutional provision are dismissed.

C.   Conspiracy to Violate Constitutional Rights

The plaintiffs allege that the defendants conspired to violate the plaintiffs' constitutional rights.  Compl. ¶ 63.  The plaintiffs do not specify under which statute they bring their conspiracy claim.

A claim of conspiracy to violate one's constitutional rights may be brought under 42 U.S.C. § 1983.  A Section 1983 conspiracy claim, however, is not actionable without an underlying violation of the plaintiff's constitutional rights.  Dykes v. Southeastern Pa. Transp. Auth., 68 F.3d 1564, 1570 (3d Cir. 1995).  Because the plaintiffs' underlying constitutional claims fail here, there can be no conspiracy claim under § 1983.

A plaintiff may also plead conspiracy to violate constitutional rights under 42 U.S.C. § 1985.  The plaintiffs' claim does not fall under the activities covered by the 42 U.S.C. § 1985.  Under 42 U.S.C. § 1985, a defendant may be liable if he or she conspires to: (1) prevent an officer from taking office or perform his duties; (2) obstruct justice; or (3) deny a person or

class of persons equal protection or privileges and immunities under the law.  None of these acts is at issue in this case.

The constitutional conspiracy claims will be dismissed.

D.   <u>Claims under the APA</u>

The plaintiffs claim that the DOL violated the APA by improperly issuing subpoenas to them and asserting jurisdiction over their businesses.  A person who suffers a legal wrong because of an agency action is entitled to judicial review of that action under 5 U.S.C. § 702.  This grant of judicial review is limited, however, to agency action that is made reviewable by statute and final agency action for which there is no other adequate remedy in court.  5 U.S.C. § 704.

The APA's grant of judicial review is narrow.  When a plaintiff can bring its case directly against the defendants, or requests the same relief for a single violation it has sought in an earlier action, judicial review under the APA is inappropriate.  <u>See</u> <u>Am. Disabled for Attendant Programs Today v.</u> <u>U.S. Dep't of Hous. & Urban Dev.</u>, 170 F.3d 381, 390 (3d Cir. 1999).  Under this standard the DOL's actions are not subject to judicial review.

The complaint alleges that certain "rules" and "other agency actions" violate the APA.  The rules include:  (1) the secretary's regulations about the contents of the administrative subpoenas, and (2) earlier assertions by the DOL that they do not

have jurisdiction over multiple employer trusts like those managed by the plaintiffs.  The "other agency actions" are the informal procedures used to issue the administrative subpoenas.

In their opposition to the defendants' motion, the plaintiffs clarify that they do not believe that filing of an enforcement suit is a final agency action, but that "the lawsuit is an exercise of agency discretion and the product of its ill-applied internal procedures that do not ferret out claims that are not based on established law."  Compl. ¶¶ 71-72, Pls.' Opp. 22.

The plaintiffs now challenge the same actions, and request the same equitable relief, as they did in the subpoena enforcement proceedings before this Court.  The subpoena enforcement actions therefore provided the "adequate remedy" that precludes judicial review under the APA.  It is irrelevant that the plaintiffs were not successful in avoiding the DOL's subpoenas.  See Turner v. Sec'y of U.S. Dep't of Hous. & Urban Dev., 449 F.3d 536, 541 (3d Cir. 2006) (holding that the fact that the plaintiff's complaint had been dismissed in an earlier proceeding did not mean that the proceeding was not an adequate remedy in court).

In contrast to earlier proceedings in this case, the plaintiffs ask for damages in addition to equitable relief.  The

United States has not waived sovereign immunity for monetary damages under the APA.  The APA states:

> An action in a court of the United States seeking relief <u>other than money damages</u> and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702 (emphasis added); <u>see also</u> <u>Jaffee v. United States</u>, 592 F.2d 712, 719 (3d Cir. 1979) (finding that permitting amendment of equitable claims to include damages would conflict with the statutory purpose of the APA waiver).

The plaintiffs rely on <u>Bowen v. Massachusetts</u>, 487 U.S. 879 (1988), in arguing that there is no sovereign immunity for claims for money damages.  The <u>Bowen</u> plaintiffs petitioned the district court to reverse a federal agency's decision refusing to reimburse a sum of money to Massachusetts under Medicaid.  The Supreme Court affirmed the trial court's ruling, noted that the district court had not ordered any money to be paid, and distinguished the claim from one for damages, which "provide relief that substitutes for that which ought to have been done." The action thus fell within the waiver of sovereign immunity. <u>Id.</u> at 910.  Here, the plaintiffs ask for traditional damages rather than the special relief sought by the <u>Bowen</u> plaintiffs,

and their APA claims for damages are thus barred by sovereign
immunity.

      E.    <u>Claims under the Pennsylvania Constitution</u>

      The rights afforded under Article I, Section 1 of the
Pennsylvania Constitution are coextensive with federal due
process.  "The requirements of Article I, Section 1 of the
Pennsylvania Constitution are not distinguishable from those of
the 14th Amendment . . . [and courts] may apply the same analysis
to both claims."  <u>Pa. Game Comm'n v. Marich</u>, 666 A.2d 253, 255
n.6 (Pa. 1995) (citing <u>R. v. Pa. Dep't of Pub. Welfare</u>, 636 A.2d
142, 152-53 (Pa. 1993)).  This reasoning applies equally to
claims under the Fifth Amendment Due Process Clause as well.
<u>Robbins v. Cumberland County Children & Youth Svcs.</u>, 802 A.2d
1239, 1252 (Pa. Commw. Ct. 2002) (en banc).  The Court dismisses
the plaintiffs' claims under the Pennsylvania Constitution
because the plaintiffs have failed to state a claim for
violations of their rights to due process under the U.S.
Constitution.

      In the alternative, the plaintiffs' claims under the
Pennsylvania Constitution will be dismissed because they are
barred by sovereign immunity.  The United States may not be sued
without its consent.  <u>United States v. Mitchell</u>, 463 U.S. 206,
212 (1983).  There is a strong presumption of sovereign immunity
unless there is a clear waiver from Congress.  <u>See</u> <u>United States</u>

v. Nordic Vill., Inc., 503 U.S. 30, 33-34 (1992) (stating the
rule that waiver must be "unequivocally expressed").

When, as here, a plaintiff brings a civil action
against an employee acting within the scope of his or her
employment, the United States is substituted as the defendant.
28 U.S.C. § 2679(d)(1).  The person arguing that the government
has waived sovereign immunity has the burden of persuasion to
establish that such a waiver exists.  See, e.g., Holloman v.
Watt, 708 F.2d 1399, 1401 (9th Cir. 1983).

The plaintiffs have not shown any evidence that waiver
has been made.  Other courts in this district have found that the
United States has not waived sovereign immunity for claims under
the Pennsylvania Constitution.  See, e.g., Shoman v. United
States Customs & Border Protection, No. 07-994, 2008 WL 203384,
at *5 (W.D. Pa. Jan. 24, 2008) (dismissing claims under the
Pennsylvania Constitution for lack of subject matter jurisdiction
where no showing of waiver was made).

F.   Dragonetti Act Claims

The plaintiffs' Dragonetti Act claims will be
dismissed.  There are two independent reasons why these claims
are not viable: (1) the actions that are challenged in the
complaint are not violations of the Dragonetti Act; and (2) the
United States has not waived sovereign immunity for these claims.

1.   Failure to Meet Dragonetti Act Requirements

The Dragonetti Act is the Pennsylvania codification of the tort of wrongful use of civil proceedings.  A Dragonetti Act claim may only be brought when "the proceedings have terminated in favor of the person against whom they are brought."  42 Pa. Cons. Stat. § 8351(a)(2).

There are two underlying proceedings in this case. First, the Court enforced the 2004 subpoenas issued by the DOL in their entirety and the 2006 subpoenas in part.  Both decisions were affirmed by the Court of Appeals.  Second, there is a pending ERISA action brought by the Department of Labor (Civil Action No. 09-988).  There has not been a final decision in that suit.  Because neither of the proceedings has terminated in the plaintiffs' favor, the Dragonetti Act's requirements are not met.

2.   Sovereign Immunity

The plaintiffs' Dragonetti Act claims also are barred by sovereign immunity.  Under the Federal Tort Claims Act, the federal government explicitly retains sovereign immunity for certain intentional torts, including malicious prosecution.  28 U.S.C. § 2680(h).  The plaintiff argues that because the Dragonetti Act is a state statute, sovereign immunity does not apply.  There is no case law that supports this argument.

Even if the Dragonetti Act cause of action was not covered by the retention of sovereign immunity for malicious

prosecution in the FTCA, the plaintiffs have not shown a waiver of sovereign immunity in the text of the statute. See Cudjoe ex rel. Cudjoe v. Dep't of Veterans Affairs, 426 F.3d 241, 246-47 (3d Cir. 2005). Sovereign immunity is thus an independent ground for dismissal of the plaintiffs' Dragonetti Act claims for lack of subject matter jurisdiction.

G.   Conspiracy to Violate the Plaintiffs' State Law Rights

Under Pennsylvania law, there can be no cause of action for civil conspiracy without the commission of the underlying act. McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 660 (Pa. Super. Ct. 2000). Because the state law claims warrant dismissal, the civil conspiracy claim must be dismissed as well.

H.   Punitive Damages

A request for punitive damages is "similar to a derivative claim," and thus a "separate but dependent claim for relief." In re Collins, 233 F.3d 809, 811 (3d Cir. 2000). Because all of the plaintiffs' substantive claims are dismissed, their claim for punitive damages must be dismissed as well.

III. Conclusion

The plaintiffs have pled certain claims over which the Court lacks subject matter jurisdiction because with respect to those claims, the United States has failed to waive sovereign

immunity or the law under which the claim is brought does not
bind the defendants.  These claims include the Dragonetti Act
claims, all claims sounding in defamation, APA claims for money
damages, Pennsylvania constitutional claims, and Fourteenth
Amendment constitutional claims.

The plaintiffs' remaining claims are for violations of
their First and Fifth Amendment rights under the U.S.
Constitution.  The plaintiffs here have had several opportunities
to articulate the theories by which the defendants have
retaliated against them for the exercise of free speech rights
and denied them due process of law.  The plaintiffs have amended
their complaint once in response to the defendants' earlier
motion to dismiss (Docket Nos. 25).  In the plaintiffs' original
Motion to Amend the Complaint (Docket No. 29), the plaintiffs
acknowledged that "the proposed amendment does not attempt to
alter the history of the case or introduce any new factual
element."  Id. at 4.

The factual basis for the plaintiffs' claims included
the filing of the ERISA enforcement suit and issuance of
administrative subpoenas by the defendants.  The Court granted
the plaintiffs leave to amend to add references to statements the
Secretary of Labor made to the press in conjunction with the
ERISA suit.  Id.  As amended, the factual allegations of the
complaint fail to state a claim.  The Court concludes that

-24-

granting the plaintiffs leave to amend their complaint again
would be futile.  See Philips v. County of Allegheny, 515 F.3d
224, 245 (3d Cir. 2008) (leave to amend should be granted
following 12(b)(6) dismissal unless the district court finds that
amendment would be inequitable or futile).

An appropriate order shall issue separately.